FOSTER v. CITY OF UNION

(123 S. E., 839)

1. MUNICIPAL CORPORATIONS—INJURY BY ELECTRICAL VOLTAGE HELD NOT WITHIN STATUTE MAKING CITY LIABLE FOR NONFEASANCE IN KEEPING STREETS IN REPAIR.—Evidence that plaintiff's father fixed an extension wire from a socket on his porch and carried it into the street, and plaintiff was injured by high electrical voltage from wire in close proximity to extension wire, while holding an ordinary electric light globe placed at other end of extension wire, to enable his brother to see how to repair his father's automobile parked in street, *held* not to show right of action under Civil Code 1922, § 4478, against city operating electric light plant; plaintiff's injury not being caused by nonfeasance or misfeasance in connection with keeping streets in condition of proper repair.

Note: On municipal liability for negligent operation of electric light plant, 5 L. R. A. (N. S.), 536.

On duty of municipality to prevent contact of wires carrying electric current in highway, see note in 52 L. R. A. (N. S.), 590.

2. MUNICIPAL CORPORATIONS—STATUTORY LIABILITY OF CITY FOR TORTS.—Duty for breach of which Civil Code 1922, § 4478, gives a right of action is duty to maintain streets in a reasonably safe condition, and breach of that duty may be predicated on either defect in street or defect in, or mismanagement of, anything under city's control in making repairs on street from which injury results to any person engaged in legitimate use of street, but that liability is conditioned on existence of actionable negligence as that term is applied in law of torts.

3. NEGLIGENCE—KNOWLEDGE OF PERIL NECESSARY.—Foundation of liability for negligence is knowledge or opportunity by exercise of reasonable diligence to acquire knowledge of peril which subsequently results in injury.

4. MUNICIPAL CORPORATIONS—ACT OF PLAINTIFF'S FATHER IN PLACING EXTENSION WIRE IN STREET HELD EFFICIENT INTERVENING CAUSE OF PLAINTIFF'S INJURY FROM HIGH VOLTAGE WIRE OF CITY.—Where plaintiff's father fixed extension wire from socket in his porch and carried it into the street, and plaintiff was injured by high electrical voltage from wire in close proximity to extension wire, while holding electric light globe placed in other end of extension wire, *held* that father's act was such an efficient intervening responsible cause of injury, as would make that act proximate cause of injury, and city's alleged negligent placing of high voltage wire in street merely condition by which injury was made possible, and not a concurring proximate cause thereof.

Before SEASE, J., Union, May, 1923.   Affirmed.

Action by H. G. Foster, Jr., by his guardian *ad litem* H. G. Foster against the City of Union.   From an order of nonsuit plaintiff appeals.

*Messrs. John K. Hamblin, Barron, Barron & Barron* and *Mendel L. Smith,* for appellant, cite. *Liability of city for damages to person and property:* 2 N. & McC., 537; 14 S. C., 291; 19 S. C., 412; 43 S. C., 398; 58 S. C., 413; 114 S. C., 147; 111 S. C., 7; 76 S. C., 202; 73 S. C., 254; 111 S. C., 421; Vol. 1, Code, 1922, Sec. 4478; 57 S. C., 294; 84 S. C., 122; 88 S. C., 553; 104 S. C., 228; 66 S. C., 448; 89 S. C., 30; 115 S. C., 29; 94 S. C., 375; 104 S. C., 371; 95 S. C., 187; 106 S. C., 255; 107 S. C., 123; 107 S. C., 505; 89 S. C., 514; 114 S. C., 382; 117 S. C., 251; 114 S. E.. 857; 121 S. C., 200.

*Messrs. Macbeth Young, John D. Long* and *J. Gordon Hughes,* for respondent, cite. *Case controlled by* 111 S. C., 7: 119 S. E., 869; 43 S. C., 401; 66 S. C., 448; 70 S. C., 142; 71 S. C., 170; 115 S. C, 367.

August 5, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

Action against a municipal corporation for the recovery of damages on account of personal injuries.

The appeal is from an order of nonsuit, and the sole question raised is whether the case made is one for which the enabling statute (Section 4478, Vol. 3, Code, 1922), gives a right of action against a city or town.

The plaintiff adduced evidence which established, or tended to establish, the following facts: That the plaintiff was injured by a high voltage current of electricity while engaged in holding an ordinary electric light globe to enable his brother to see how to make certain repairs on their father's automobile, which had been parked for that purpose on one of the public streets of the defendant city just in front of their home; that the plaintiff was then a minor 16 years of age; that the light held by the plaintiff at the time of his injury was an ordinary incandescent house light, placed at the end of extension wires, which reached from a socket in the porch ceiling of the dwelling, and which had been carried into the street by plaintiff's father a distance of about seven steps, and that this light could be used in and out of the house for various domestic purposes; that such a light had generally been used by the people, and that no objection to its use was made by the respondent by ordinance, rule, regulation, or otherwise; that such drop extension lights were not only used by the people but were actually sold by the respondent for their use; that the respondent furnished all electricity used in the city for residential and street lighting purposes; that at the time of the alleged injury

to the appellant the automobile of his father was on Lybrand
Street, and in such a position during the repair work thereon
as not to interfere with ordinary street traffic; that repairs
on said automobile were being made at this time and place
because there was no space in the yard or on the premises
available for such work, and the labor of the son could not
be secured until he had concluded his work elsewhere late in
the afternoon; that on one of the poles placed and main-
tained on the edge of Lawson Avenue, a nearby public street,
and under the control of the respondent a wire carrying a
high voltage current of electricity (2,300 volts) was in such
close proximimity to a wire carrying the low current into
the plaintiff's home as to be apparently "laying together";
that such a condition was extremely faulty in scientific con-
struction and maintenance, and dangerous to any one who
should handle any of the house lights, in that it permitted
the high voltage current, destructive of life, to be sent into
the house for ordinary lighting purposes; that unusual
shocks were experienced in the homes of others after the
street lights were turned on, who were on the same line, and
complaints were made in consequence thereof to the proper
authority; that the work of repair on the automobile was
done in perfect safety to all until the street lights were
turned on and the condition of unsafety created in the street
as the result of the improper course of the high voltage cur-
rent; and that the plaintiff was thereby severely burned,
disfigured, and permanently injured while on the street and
engaged as heretofore stated.

The contentions embraced within appellant's exceptions
are thus stated by counsel:

"(1) That needful and emergency repair work done on
an automobile, or other vehicle, on a public street or high-
way at such time, place, and under such circumstances, as
will not materially interfere with the use thereof by others,
is not, as a matter of law, an improper or unlawful use
thereof; (2) that testimony should have been received to

show, and the issue submitted to the jury to determine whether the street in question was being used by the plaintiff at the time of his injuries for an unreasonable or unlawful purpose; (3) that, if one is not engaged in an improper or unlawful use of a public street, he is using such street for a legitimate street purpose, and if he sustains an injury on such street through the agency of a high voltage current of electricity frunished by the defendant through the negligent placing of its wires on poles in the street, and used and controlled by the municipality for lighting the street and making it reasonably safe from the effects of darkness, such injury is either due, as a matter of law, to a 'defect" in such public street or to the 'mismanagement' of an agency 'under control of the corporation within the limits' of the city within the contemplation of Section 4478, of the Code of Laws, 1922, and such person may maintain thereunder an action for his actual damages, unless he is guilty himself of contributory negligence."

The provisions of the statute, upon which the foregoing contentions are predicated, are as follows:

"Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof. If any such defect in a street, causeway or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceed the ordinary weight: Provided, the said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement: Provided, further, such person has not in any way brought about any such injury or damage by his or her own negligent act or negligently contributed thereto."

The settled law of this State, upon which that statute, passed in 1892 (21 Stat. 91), was ingrafted, and in the light of which it must be interpreted and applied, is thus clearly stated by appellant's counsel:

"The rule was adopted in this jurisdiction at an early period (1820), and has been constantly adhered to in subsequent decisions, that a municipal corporation is a mere governmental agency established for public purposes, and is not liable in a civil action *ex delicto* for damages for injury to person or property sustained in consequence of a breach of duty by an act of nonfeasance or misfeasence on the part of its agents or officers, in the absence of a constitutional or statutory provision imposing such liability (*Young v. Commissioners,* 2 Nott & McC., 537. *Coleman v. Chester,* 14 S. C., 291. *Black v. City of Columbia,* 19 S. C., 412; 45 Am. Rep., 785. *Dunn v. Barnwell,* 43 S. C., 398; 21 S. E., 315; 49 Am. St. Rep., 843. *Barksdale v. Laurens,* 58 S. C., 413; 36 S. E., 661. *Moss v. Aiken,* 114 S. C., 147; 103 S. E., 520. *Triplett v. City of Columbia,* 111 S. C., 7; 96 S. E., 675; 1 A. L. R., 349), and then only upon a substantial compliance with the prescribed requirements and conditions upon which such liability is predicated (*Dunn v. Barnwell, supra; Cooper v. Richland,* 76 S. C., 202; 56 S. E., 958; 10 L. R. A. (N. S.), 799; 121 Am. St. Rep., 946. *Duncan v. Greenville,* 73 S. C., 254; 53 S. E., 367. *Aughtry v. City of Columbia,* 111 S. C., 421; 98 S. E., 195)."

The statute was first construed in the case of *Dunn v. Barnwell,* 43 S. C., 398; 21 S. E., 315; 49 Am. St. Rep., 843, decided in 1894. In that case the Court (McIver, C. J.) held:

"It is apparent from the title of this act, as well as from the terms used in the body of the act, that the sole purpose was to give a person who had sustained an injury by reason of a defect in a street, a right of action to recover damages for such injury. The title of the act is as follows: 'An Act providing for a right of action against a municipal corpora-

tion for damage sustained by reason of defects in the repair
of streets, sidewalks, and bridges, within the limits of said
municipal corporation,' and it is manifest that the purpose
thus declared in the title was adhered to in the body of the
act, especially from the language used in the proviso above
set out, where it is declared that the corporation should not
be liable, 'unless said defect was occasioned by its neglect or
mismanagement;' indicating very clearly that the term 'mis-
management,' as used in a previous part of the act, meant
mismanagement in making repairs on the streets, so that the
corporation should be held liable, not only for neglect in mak-
ing the repairs on the streets, but also for mismanagement
of anything under the control of the corporation in making
such repairs.    There is nothing whatever in the act indicat-
ing an intention on the part of the Legislature to make a
municipal corporation liable for any other nonfeasance or
misfeasance on its part, except such as was connected with
the keeping of the streets, etc., in proper and safe repair."

That the construction of the statute thus adopted has
been more or less consistently adhered to in the sub-
sequent decisions of this Court is, as we apprehend,
not open to question.    The appellant does not, as we under-
stand, contend to the contrary, but seeks to square his con-
tentions in this case with the construction of the statute
adopted in *Dunn v. Barnwell, supra,* by force of analogy
to certain subsequent decisions of the Court in which a right
of action has been accorded litigants in personal injury cases.
But in the absence of an intentional departure, in substance
and in principle, from the construction and interpretation of
the statute enunciated in *Dunn v. Barnwell,* we are con-
cerned here with the application of the law as thus settled
to the facts of this particular case.    A review of the deci-
sions, either for the purpose of squaring the conclusions
therein reached with the case of *Dunn v. Barnwell,* or for
the purpose of differentiating the facts of more or less
analogus cases from those of the case at bar, would there-

18—S. C. R., 129.

fore serve no useful purpose. The question here presented, we think, is to be resolved in the light of the well-settled propositions embodied in the construction of the statute adopted in *Dunn v. Barnwell,* viz. (1) that the duty for a breach of which the statute gives a right of action is the duty owed by the municipality to maintain its streets, etc., in a condition of reasonably safe repair (*Hiott v. Town of Walterboro* [S. C.], 119 S. E., 869) ; (2) that such breach of duty may be predicated upon either a defect in the street, etc., or a defect in or mismanagement of anything (within the town limits) under the control of the corporation in making repairs upon streets, etc., from which injury results to any person engaged in a legitimate use of the street, etc.; and (3) that liability is conditioned upon the existence of actionable negligence as that term is understood and applied in the law of torts.

Broadly, was the plaintiff's injury caused by the negligence or misconduct of the defendant in failing to perform, or in wrongfully performing, its duty to keep its streets in a condition of proper repair? In reasolving that inquiry, we do not think the question of whether, at the time of his injury, the plaintiff was engaged in a legitimate use of the street is a controlling consideration. For the purposes of this discussion, therefore, it will be assumed that any use of the street which is not unlawful is a legitimate use, and that the use which plaintiff· was making of the street, as hereinafter described, was a legitimate use. That use was to stand or sit on or in the street and hold a light for the purpose of enabling his brother to carry on the mechanical operation of repairing the family automobile. While so using the street, plaintiff says he was injured by a high voltage current of electricity. In that situation actionable negligence of the city must of necessity be predicated on the theory that to one engaged in the legitimate use of this street for the purpose of repairing or assisting in the repair of an automobile the city owed the duty of protecting him from

the danger of injury by electric current.  Assuming, then, that the city owed to one using the street, as plaintiff was using it, for the purpose of repairing an automobile, the duty of protecting him from the danger of injury by electric current, is the evidence of the case at bar reasonably susceptible of an inference that the defendant was guilty of actionable negligence in failing to discharge that duty?

From the viewpoint of "defect" in, or defective condition of, the sereet, in what way was the defendant guilty of negligence in failing to protect one using Lybrand Street, for the purpose of repairing an automobile or for any other purpose, from the peril of injury by coming in contact with an electric current?  The evidence conclusively discloses that on or in Lybrand Street, where plaintiff was injured, there was no pole, wire, chain, socket, lamp, or any other mechanical appliance or means by which an electric current could be conveyed to, or into dangerous proximity to, one on or in Lybrand Street for any purpose.  For the purpose of conveying electric current into or upon the street where it might come in contact with a person using the street, the evidence discloses no basis whatever for an inference that the city had provided, or had authorized the use of any means, instrumentality, or agency of any kind.  For the protection of persons using Lybrand Street from the danger of injury from electric current, there is no room for doubt, therefore, that the city had made the absolutely safe arrangement of providing a street in which there was no instrumentality, appliance, or means of any kind through which an electric current could reach and injure a user of the street.  If so, it would seem clear that there was no actionable negligence, certainly, in the aspect of the case having to do with a defect in the street, for which the defendant could be held liable, unless the evidence is reasonably susceptible of an inference that the city was guilty of such negligence (1) either in permitting the plaintiff's father to convey the electric current into the street by means of the

extension cord attached to the socket, in the porch of his residence, or (2) in failing to use due care to protect plaintiff after the current had been conveyed into the street by the act of a responsible third party, the father.

As to predicating liability upon the view that the city was negligent in permitting the plaintiff's father to carry the electric wire into the street, we do not understand that any such contention is made by appellant. For that reason, and for the reason that that position is, we think, patently untenable, it will not be discussed.

But appellant has earnestly and ingeniously urged the view that, after the electric current had been carried into the street by the plaintiff's father—an act for which, he says, the plaintiff was not responsible—the city was guilty of actionable negligence in failing to protect the plaintiff from danger of injury by that current, in that through the mismanagement of something under the control of the city, viz., the city's lighting plant and equipment, used and intended for use, in part, in maintaining the street in a condition of safe repair, a high voltage current was turned on the wire connected with the lamp the plaintiff was holding in Lybrand street. Obviously, it would seem, if the city in the discharge of its duty to keep Lybrand Street in a state of safe and proper repair and to refrain from injuring the plaintiff while using the street by the "mismanagement of anything under control of the corporation in making such repairs (*Dunn v. Barnwell*) owed the plaintiff the specific duty of protecting him against injury from the high voltage current, which got on the wire he was holding, the evidence should afford adequate basis for an inference that after the current had been thus carried into the street the defendant knew, or in the exercise of due care should have known, that this defective condition, constituting the source of danger to the plaintiff, existed. If, for example, the plaintiff had been injured by falling into a ditch in the street dug by his father or brother for the

purpose of facilitating the work of repairing the automobile, it would scarcely be contended that the city could be held liable for negligence in the absence of an evidential showing that the city knew of the ditch, or by the exercise of due care in the inspection of its streets might have known of its existence. 13 R. C. L., 337, § 277. It is elementary that the foundation of liability for negligence "is knowledge—or what is deemed in law to be the same thing: Opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury." 20 R. C. L., 13 § 9. There is nothing in the evidence to support an inference that the city authorities knew, or by the exercise of due diligence in the inspection of its streets should have known, of the adventious circumstance that a current of electricity had been conveyed from a residence by means of an extension cord into the street, and at the time of the injury constituted a part of the physical condition of the street. The mere fact that the light had been used by the Fosters the night before, in the absence of other evidence tending to establish actual or constructive notice, affords no adequate basis for a finding of fact that in the discharge of any duty connected with keeping its streets in repair the city should have discovered or foreseen the presence of the wire in the street at the time of plaintiff's injury. If the city did not know of this temporary and fortuitous presence of the lamp in the street, and was not guilty of a lack of due care in not knowing of its presence there, manifestly it was guilty of no actionable negligence in failing to protect the user of the street from danger of injury from that source.

But appellant says, in substance, that the essential element of knowledge is imputable to the city under the facts of this case, on the theory that in the operation of the dangerous instrumentalities of its electrical plant it was bound to discover and inform itself of perils that constitute a menace to persons and property, and that in law the city is held to a

knowledge of the natural consequences of its act of negligence in laying certain wires too close together at a point on Lawson Avenue, a block or two away from Lybrand Street. The danger involved in placing the wires in too close proximity under plaintiff's theory of the facts of this case, was the danger of charging the wire carrying the current for lighting houses with the high voltage current carried on the wire which supplied current for the street lamps. Charging the wires running into the houses with a high voltage current could result in injury only to those who might come in contact therewith. Granting that knowledge of the danger of such contact, as a natural consequence of the act of improperly placing the wires, would be imputable to the city, and that if the city were liable generally for its torts, a showing of injury to one who came in contact with a high voltage current as a result of this improper placing of wires of an electric plant owned and operated by the city would make a *prima facie* case of actionable negligence, when under the law of this jurisdiction the only negligence for which a town or city is liable is lack of due care in the discharge of its duty to maintain its streets, etc., in safe and proper repair, it is evident that the act here relied on to establish actionable negligence must meet the further test that it was an act or ommission, from which, in the exercise of due care, danger of injury to those engaged in a legitimate use of the streets, etc., might reasonably have been anticipated or foreseen. The conclusion that the improper placing of the wires on Lawson Avenue was not an act which might reasonably have been expected by a man of ordinary prudence and foresight to entail danger of injury to one engaged in the legitimate use of Lybrand Street is embraced in the views already expressed.

But let us further test that conclusion from the angle of the law of proximate cause. Between the alleged negligent laying of the wires on Lawson Avenue and the injury to plaintiff on Lybrand Street intervened the

operation of the independent force of the father's act in carrying the house wire and lamp into the street. The injury to plaintiff could not have been anticipated without foreseeing the act of the father, or of some other person acting to the same end, in taking the house wire into the street by means of an extension cord, or other device. Obviously, the foresight which the law imputes to a tort-feasor cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of the injury. Under the undisputed facts of this case the act of the father in carrying the house wire and lamp into Lybrand Street would seem clearly to meet the test of what constitutes such an efficient, intervening, proximate cause of an injury. It was not an act induced, produced or set in motion by the alleged negligent act of improperly placing the wires or by any other delict of the city. It was not an act, as we have seen in the foregoing discussion, which, in the discharge of the particular duty owed to the plaintiff, the city could have foreseen in the exercise of reasonable diligence. It was an act without which the plaintiff's injury could not have happened. 22 R. C. L., 132, § 18. In that situation we think the act of the father was such an efficient, intervening, responsible cause of the plaintiff's injury as would as a matter of law make of that act the proximate cause of the injury and the alleged negligent placing of the wires in Lawson Avenue merely the condition by which the injury was made possible and not a concurring proximate cause thereof. See *Martin v. Ry.,* 77 S. C., 370, 375; 58 S. E., 3; 122 Am. St. Rep., 574. *Davis v. R. R. Co.,* 21 S. C., 93. *Glenn v. R. R. Co.,* 21 S. C., 466. *Hill v. R. Co.,* 31 S. C., 397; 10 S. E., 91; 5 L. R. A., 349. *Land v. Railway,* 67 S. C., 290, 294; 45 S. E., 203. *Evatt v. Piper Roofing Co.* (S. C.). 123 S. E., 203, and cases there cited. In no view, there-

fore, do we think it may soundly be held that the evidentiary facts make out a case of actionable negligence under the statute.

The Circuit Judge correctly so ruled, and the judgment of the Circuit Court must be affirmed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.